### 1265.  CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MANCHESTER MANUFACTURING COMPANY

1. The evidence authorized the finding in favor of the plaintiff, and the amount of the verdict is not excessive.
2. In the absence of a request in writing, it is not reversible error for the court to omit to charge upon the burden of proof.  In the absence of a request for more specific instructions, it was not error to instruct the jury, upon the subject of the burden of proof, that "it is essential for the plaintiff in this case, in order for the plaintiff to recover, that the evidence shall show, by a preponderance thereof, that the plaintiff is entitled to recover," although the court may not thereafter have specified or particularized each of the special points at issue as to which the burden of proof devolved upon the plaintiff.
3. There being evidence that the cotton which was the basis of the present suit was delivered to the carrier, and was never delivered by the carrier to the consignee, it was not error to instruct the jury that a common carrier is bound to exercise extraordinary diligence, and that in case of loss the presumption of law is against a common carrier, and no excuse avails the carrier unless the loss is occasioned by the act of God or the public enemies of the State.

Action on contract, from city court of Macon—Judge Hodges.  June 13, 1908.

Argued October 27, 1908.—Decided June 15, 1909.

*Wimberly & Jordan,* for plaintiff in error.

*John P. Ross,* contra.

RUSSELL, J.  The plaintiff in error excepts to the judgment overruling its motion for new trial.  In addition to the usual assignment that the verdict was contrary to the evidence and without

evidence to support it, exception is taken to the instructions to the jury which are stated below. The suit was brought by the Manchester Manufacturing Company to recover the value of eight bales of cotton which it alleged had been delivered to the defendant as a common carrier for transportation from Forsyth to Macon, Ga., and which the carrier failed to deliver. It was not denied that the cotton was the property of the consignee, the plaintiff. The weights and value of the cotton were not disputed, and this disposes of the complaint that the verdict is excessive. So far as the facts are concerned, the only questions to be determined are, whether the plaintiff in error received the cotton, and whether thereafter it was delivered to the defendant in error.

As we view the record there is practically no dispute that the cotton alleged to have been lost was received by the carrier company. The date of the bill of lading introduced in evidence, which acknowledged receipt by the carrier of 50 bales of cotton from B. F. Hill, consigned to "order, notify Manchester Mills," Macon, Georgia, the cotton being marked "M A N," together with the oral testimony showing that only 42 bales of this lot of cotton were shipped in a separate car and that the eight remaining bales were shipped in a different car, establishes clearly that the carrier received the eight bales identified by the witnesses by marks and weights. The real issue in the case was whether or not the carrier had delivered the cotton to the Manchester Mills. It is undisputed that it is the custom of the Central of Georgia Railway Company to effect delivery to the Manchester Manufacturing Company by means of a side-track, and the delivery of shipments consigned to the cotton factory at its own warehouse on that side-track. Three witnesses testified that the eight bales of cotton in question were never delivered to the manufacturing company at its warehouse. We think this would have authorized the finding that the carrier did not deliver the cotton to the consignee, even if there had been evidence directly in conflict, if the jury judged these witnesses to be credible. To rebut this testimony the railway company proved that the eight bales of cotton were taken from the car in which they reached Macon and deposited in another car and direction was given that this car should be carried to the manufacturing company's side-track. There was, however, no evidence on the part of any employee of the carrier that the car was

transferred to the usual place of delivery at the warehouse of the Manchester Manufacturing Company while it contained the cotton; in other words, no evidence that the cotton was ever carried to the side-track of the manufacturing company. The circumstances that the eight bales of cotton were reloaded into car I. C. 24703 on Saturday, September 29, and that switching instructions in regard to it were given, and that the same car was used on October 2, by the Manchester Manufacturing Company, which loaded it with yarn consigned to Philadelphia, would show that the car was switched from the depot to the side-track at Vineville some time between Saturday, September 29, and Tuesday, October 2, a period of three days, and might support the inference that the car, when it reached the Manchester Mills and went into the possession of the manufacturing company, contained the eight bales of cotton. But to rebut this inference the employee of the manufacturing company who made and received shipments in its behalf testified that he not only did not receive the eight bales of cotton from the car, but when he examined the car, with a view of using it to make the shipment of yarn, he found it empty; and the jury may have considered it as a circumstance of considerable significance that no witness was introduced in behalf of the defendant carrier to show when the car in question was shifted to the manufacturing company's side-track, or to show whether it was empty or what it contained at the time that it was delivered upon that track. The burden of proof was upon the plaintiff to show affirmatively, by a preponderance of the evidence, that the cotton was never delivered to it by the defendant company. There was no presumption either way as to this. It seems to us, in the absence of any evidence that when the car was shifted to the usual place of delivery it contained the cotton, that the positive evidence of the witnesses whose duty it was to unload all shipments consigned to the manufacturing company, and who testified that the eight bales of cotton were not delivered either in the car in question or any other, was entitled to that preponderance attributed to it by the jury in preference to the inference that the eight bales of cotton, having been once placed in that car, would be presumed to have been carried therein to the place of delivery; especially as the testimony developed that the car, when found at the Manchester Manufacturing Company's place, was not at the usual and customary place for the reception

of cotton. Viewing the testimony in behalf of the defendant in its strongest light, the most that can be said is that a clear issue of fact was raised as to whether the carrier had ever delivered the eight bales of cotton in question, which it was the province of the jury to determine; and their judgment upon the credibility of the testimony is not to be questioned here.

2. In the amendment to the motion for new trial it is insisted that the court erred in charging the jury: "Now, it is essential for the plaintiff in this case, in order for the plaintiff to recover, that the evidence shall show, by a preponderance thereof, that the plaintiff is entitled to recover," for the reason that the court did not explain what evidence would entitle the plaintiff to recover. This exception affords an illustration of the truth that generally a fragmentary segment of a charge can not be justly criticised when disassociated from its setting. It has frequently been held that it is not reversible error to omit entirely to instruct the jury upon the subject of the burden of proof. But of course, if instructions are attempted upon any subject, they should be correct and pertinent. Error is further assigned upon this excerpt, in that it is insisted that the court should have charged that the burden was upon the plaintiff to show: (1) that the cotton in dispute was delivered to the defendant railway company; and (2) that the cotton had never been delivered by the railway company to the plaintiff. A reading of the instructions of the trial judge, as a whole, demonstrates that the exception is without merit, for the reason that it was made perfectly plain to the jury that the plaintiff, in order to recover, must show both of the facts insisted upon by the plaintiff in error. However, viewing the excerpt alone, inasmuch as the court charged that the plaintiff would not be entitled to recover unless it showed that it was so entitled by the preponderance of the evidence, this was tantamount to an instruction that the burden was on the plaintiff to maintain its case by a preponderance of the evidence; and if more particular or specific instructions were desired, to the end that the court should point out specifically to the jury the particular points at issue (each one of which should be maintained by the plaintiff by the preponderance of evidence), then the attention of the court should have been thereto directed by an appropriate request.

3. Exception is also taken, in the second ground of the amended motion for new trial, to the following charge: "Under our law, 'one who pursues the business constantly or continuously for any period of time or any distance of transportation is a common carrier, and as such is bound to use extraordinary diligence.' In cases of loss the presumption of law is against the common carrier, and no excuse avails the common carrier unless it was occasioned by the act of God or the public enemies of the State." The plaintiff in error insists that this charge was misleading, and that the court should have charged that before any presumption would arise against the common carrier the burden of proof was upon the plaintiff to show affirmatively that the cotton in dispute was never delivered by the carrier to the plaintiff. We do not think that this instruction misled the jury; and upon a review of the whole charge it is clear that the jury were made to understand that the principle, which is abstractly a correct statement of §2264 of the Civil Code, was not applicable unless the jury were first satisfied that the cotton in question was never delivered by the carrier to the plaintiff. Indeed, no other meaning can be drawn from the very language as contained in the code and as used by the trial judge. Whether this section should have been charged or not, it is manifest that the plaintiff in error could not have been injured, because it is only in cases of loss that the presumption that there was a failure to use extraordinary diligence arises against the common carrier, and the jury would well understand that the cotton could not be said to be lost in any sense in the present case unless it had been first made apparent that it had never been delivered to the consignee.

This writ of error appears to us so entirely without merit as to constrain the belief that its only purpose, legally speaking, was to procure delay. It is, therefore, the judgment of the court that not only should the judgment of the lower court be affirmed, but that the motion of the defendant in error that damages be awarded should also be granted.

*Judgment affirmed, with damages.*